# In re Jacob and Harmke Verburg and Wesco, Inc.

[616 A.2d 237]

No. 91-196

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 4, 1992

*Re-versed and remanded.*

*Craig Weatherly* and *Charles T. Shea* of *Gravel and Shea,* Burlington, for Appellants.

*William E. Roper* of *Neuse, Smith, Roper & Venman,* Middlebury, for Appellee Richmond Land Trust.

*Jeffrey L. Amestoy,* Attorney General, *John H. Hasen,* Assistant Attorney General, and *John Beiswenger,* Law Clerk (On the Brief), Montpelier, for Department of Environmental Conservation.

**Dooley, J.** Petitioners, Wesco, Inc. and Jacob and Harmke Verburg, appeal from a declaratory ruling by the Commissioner of Environmental Conservation. That ruling makes it impossible for Wesco to build a gas station and convenience store on two lots owned by the Verburgs because the land lies in a flood plain. We affirm in part and reverse in part.

The two lots lie at the Richmond exit of Interstate 89 and were subdivided by the Verburgs under a deferral of permit issued by the Department of Environmental Conservation (DEC). The deferral requires that, for the lots in question, a permit be obtained before the erection of any structure needing the installation of plumbing and sewage treatment facilities. Wesco proposes to place such a building on one of the lots and a sewage disposal system to service the structure on the other lot.

Both lots lie within the 100-year flood plain of the Winooski River. DEC regulations require that an on-site sewage disposal system be located at least one foot above the 100-year flood plain. The flood plain elevation for the lot on which the sewerage system would be constructed lies at 304 feet. The actual elevation of the lot varies between 302 feet and 304.25 feet. The 100-year flood plain elevation for the lot on which the building would be constructed lies at 305 feet. Part of that lot has an actual elevation under 306 feet. In order to meet the DEC requirement, Wesco proposes to place one foot or more of fill on the area where the sewage disposal system would be located.

Petitioners' application for a subdivision permit was rejected by the DEC regional office because of the flood plain restriction. Thereafter, petitioners brought this petition for a declaratory ruling that they could meet the regulatory requirements by adding fill to the site. After a hearing,[1] a hearing officer appointed by the Commissioner ruled that petitioners could not meet the elevation requirements by adding fill.

This case involves the interaction of a number of DEC regulations. The DEC requires that sewage "be safely and effectively disposed of through lawful and proper means." Department of Environmental Conservation, Environmental Protection Rules § 3.09B ("DEC Rules"). Where sewage is disposed of on site, each lot must contain "a minimum required area of suitable soil sufficient for the building site[]" and for the sewerage system, separate from other features that might adversely affect the functioning of the sewage disposal system or be polluted by it. *Id.* § 3.09B(1). The size of the minimum area depends on the percolation rate of the soil and whether a public water system will be used. *Id.* Ninety percent of the minimum required area must lie at least one foot above the flood plain of any stream. *Id.* § 3.09B(2)a. As a separate requirement, the lot must contain a continuous area equal to twenty percent of the required minimum area, and the sewage disposal system must be located in the continuous area. *Id.* § 3.09B(4). The continuous

---

[1] The Richmond Land Trust, the Conservation Law Foundation and the Vermont Natural Resources Council were granted the right to intervene; these groups participated in the proceedings before the hearing officer. The Richmond Land Trust filed a brief in this appeal, in which the Conservation Law Foundation and the Vermont Natural Resources Council joined.

area must be at least one foot above the flood plain. *Id.* § 3.09B(4)a.

Chapter 7 of the DEC Rules deals specifically with sewage disposal systems. Section 7–14 is titled "Site Modifications" and states that "it may be possible to convert marginal or unsuitable sites to sites which comply with the specific requirements of these regulations." *Id.* § 7–14A. It goes on to state that "[s]ite conditions which may be improved by some degree of site modification are shallow depth to impervious layer, seasonal high ground water level, shallow depth to bedrock and excessive slope." *Id.* The section does not mention the addition of fill to a site to bring the elevation above that of the flood plain.

In reaching her decision, the hearing officer appears to have relied upon the absence of mention in § 7–14A of adding fill to comply with the flood plain requirements of § 3.09B. She also emphasized, however, that the DEC Rules were intended to implement policies in addition to the prevention of pollution. She reasoned:

> The state should not take a position which either encourages or tacitly allows residential or commercial development in a flood plain area. This position would not only be bad public policy but also an unwarranted increased risk to public health and the environment in the event of a flood. This is particularly true when the development in question is not only a subdivision but also a public building selling food and gas to the public at large as well as storing gasoline and other hazardous materials.

Petitioners attack both this policy statement and the hearing officer's conclusion that they cannot meet the flood plain requirements by adding fill. They also challenge the officer's conclusion that they must meet the minimum area requirement on both lots.

 The first issue is whether the regulations allow petitioners to place fill on the property in order to bring the elevation at least one foot above the flood plain. In construing a statute or regulation, our overall goal is to discern the intent of the Legislature or administrative agency. *Muzzy v. Chevrolet Division, General Motors Corp.*, 153 Vt. 179, 187, 571 A.2d 609, 614 (1989). We must look to the "'subject matter, its effects and

consequences, and the reason and spirit of the law.'" *Nash v. Warren Zoning Board of Adjustment*, 153 Vt. 108, 112, 569 A.2d 447, 450 (1989) (quoting *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989)). Ordinarily, however, we employ a deferential standard of review for an agency's interpretations of its own regulations. See *In re Denio*, 158 Vt. 230, 239, 608 A.2d 1166, 1171 (1992) (decisions within the expertise of an administrative agency "are presumed to be correct, valid and reasonable," and generally receive deference). Even so, we must endeavor to ensure that such deference does not result in "unjust, unreasonable or absurd" consequences. *O'Brien v. Island Corp.*, 157 Vt. 135, 139, 596 A.2d 1295, 1297 (1991). Therefore, the presumption of validity for an agency's interpretations of its regulations may be overcome by the existence of "compelling indications of error" in such interpretations. See *Rogers v. Watson*, 156 Vt. 483, 489, 594 A.2d 409, 412 (1991) (such compelling indications justify the rejection of administrative regulatory interpretations).

■ The decision in question here was made by a lawyer, serving as the hearing officer in this case, who apparently had no prior involvement with the issues. The decision was based, however, on the testimony of the DEC Chief of Engineering Services. For this reason, we will accord the decision of the hearing officer the deference ordinarily accorded to interpretations of regulations by the administrative agency responsible for their implementation.

■ ■ To support its interpretation of the rule, DEC relies primarily on the precept of "expressio unius est exclusio alterius." See *Grenafege v. Department of Employment Security*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (the expression of one thing is the exclusion of another). That is, DEC argues that the recitation of means by which a site may be altered to create a complying sewage disposal system is comprehensive, and the failure to mention the placement of fill to raise the elevation above the flood plain demonstrates that this method of alteration has been prohibited. This argument, however, fails to view the regulation as a whole. See *Williston Citizens for Responsible Growth v. Maple Tree Place Associates*, 156 Vt. 560, 563, 593 A.2d 469, 470 (1991) (court's inquiry not limited to the con-

sideration of an isolated sentence within an ordinance; a court must look at the regulation as a whole). Although the regulation contains a list of permissible methods of site alteration, as DEC emphasizes, it also contains specific prohibitions. The prohibition list does not include the placement of fill to raise the elevation above the flood plain. See DEC Rules §§ 714B(6), (7). Moreover, we have emphasized that the precept on which DEC relies is only one aid to regulatory interpretation and must give way to others in appropriate cases. See *C.V. Landfill, Inc. v. Environmental Board*, 158 Vt. 386, 391, 610 A.2d 145, 148 (1992); see also *Clymer v. Webster*, 156 Vt. 614, 625, 596 A.2d 905, 912 (1991) (maxim of expressio unius to be applied with caution and is not conclusive as to a statute's meaning).

We conclude that other factors show the "compelling indication of error" in the hearing officer's interpretation. The record in this case demonstrates that the use of fill would put Wesco's on-site sewage system in the same condition as other systems allowed by the regulations. Moreover, there would be no regulatory barrier to development if Wesco could use a public sewerage system. DEC Rules § 3.09B. Thus, DEC does not argue that its no-fill interpretation is justified by considerations of public health or prevention of pollution. The DEC Chief of Engineering Services testified that the purpose of the rule was "common sense public policy to prohibit new development in flood prone areas," and this purpose was accepted by the hearing officer.[2]

We can find no support for the hearing officer's position. The subdivision regulations originally were adopted pursuant to the power of the Vermont Board of Health to prevent pollution and secure protection of waters. See *Rogers*, 156 Vt. at 493, 594 A.2d at 414. This purpose continues to control and guide DEC's actions, and is apparent from the content of the regulations. Construction of the regulations as an attempt to stop flood plain development would create arbitrary distinctions.[3] For example,

---

[2] The hearing officer's reasoning on the policy behind the regulations is relevant only to the extent it supports her interpretation.

[3] The hearing officer recognized the arbitrariness of at least one distinction, concluding that there was a "logical inconsistency" between the treatment of lots using public sewerage systems and lots using on-site sewage disposal

we must find that the regulations may bar flood plain development when on-site sewage is used, irrespective of environmental impact, and not when a public sewerage system is used. We are not willing to imply such an unreasonable result in the absence of an express statement to that effect.

■ There is another reason to reject the hearing officer's rationale. The Legislature has adopted a specific authorization for regulation of flood plain development at the municipal level. See 24 V.S.A. § 4412. We are unwilling to infer that DEC has adopted a separate regulatory system in the subdivision regulations.

■ For the above reasons, we hold that the DEC subdivision regulations do not prevent petitioners from meeting the elevation requirements through addition of fill.[4] Our holding is not intended to address whether the specific sewage disposal plan proposed by Wesco meets the requirements of the DEC rules.[5] This declaratory judgment proceeding is concerned only with whether petitioners may raise the elevation of a lot in order to meet flood plain requirements.

■ Petitioners' second challenge is to the hearing officer's determination that DEC Rule § 3.09B requires that the "minimum area" of each of petitioners' lots be at least one foot above the flood plain. Because only one of the lots will contain the sewage disposal system, petitioners argue that there is no requirement that the other lot, which will contain the building, have an elevation above the flood plain level. They emphasize

---

systems and urged that it be addressed through a "regulatory amendment." She found, however, that the inconsistency represented a "problem of regulatory drafting" that did not undercut the interpretation she arrived at. We see the inconsistency as relevant to the proper interpretation of the regulations.

[4] This result can be reached by either of two alternative interpretations of the regulations: (1) the placement of fill does not require a permit, and DEC must review the sewage disposal plan without regard to how the elevation above the flood plain was reached; or (2) the placement of fill is a site modification that requires a permit. We need not reach which of the alternatives is correct.

[5] Richmond Land Trust argues that Wesco cannot meet certain requirements of the rules whether it uses a septic tank system or a mound wastewater disposal system. These issues are outside the scope of this proceeding.

that the applicable rule regulates sewage disposal, not building sites, and does not apply where there is a public sewerage disposal system.

We need not repeat the applicable interpretation aids or the standard of review. Unlike the first issue, where DEC based its position on the absence of express regulatory language, here it relies on the specific language of the regulation. The regulation states that "[e]ach lot shall contain a minimum required area of suitable soil sufficient for building sites, and for present and future sewage disposal . . . ." *Id.* § 3.09B(1). Ninety percent of that minimum area must be at least one foot above the flood plain level. *Id.* § 3.09B(2)a. Certainly, DEC could be concerned about the potential pollution effects of a gasoline station sited in a flood plain. Also, it is not unreasonable for DEC to require that each lot have a minimum area above the flood plain to allow for a sewage disposal system on each lot in the future.

In light of the standard of review of the DEC interpretation, the specificity of the regulation and the reasons supporting it, we uphold the hearing officer's determination that petitioners are required to meet minimum area and elevation requirements on both lots.

*Reversed and remanded for proceedings consistent with this opinion.*