2004 VT 110

## Town of Victory v. State of Vermont

[865 A.2d 373]

No. 03-196

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed October 22, 2004

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

*Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Plaintiff-Appellee.

*William H. Sorrell*, Attorney General, and *Mary L. Bachman*, Special Assistant Attorney General, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** The Vermont Department of Taxes (State) appeals from an Essex Superior Court decision setting the 1999 fair market value of land owned by the Agency of Natural Resources (ANR) in the Town of Victory (Town). Pursuant to 32 V.S.A. § 3708, the State makes annual payments in lieu of taxes (PILOT) to towns in which ANR owns land. The PILOT payments at issue are based on the appraisal value of the land as set by the director of property valuation and review (PVR), 3 V.S.A. § 2289, a division of the Department of Taxes. See 32 V.S.A. § 3708(a) (instructing director of PVR to appraise all ANR-owned land, and directing the State to make PILOT payments). Under § 3708(d), a town that disagrees with the director's appraisal can appeal the set value to the superior court, as the Town did in this case. In that appeal, the superior court found that the director's valuation was invalid and set a valuation substantially above the director's appraisal. We affirm in part, vacate the valuation of forest land set by the superior court, and remand to the director of PVR.

¶ 2. ANR owns over 19,310 acres of land in the Town. Of that amount, 8724 acres are enrolled in the agricultural and managed forest land use value program, 32 V.S.A. §§ 3751-3763, and are not part of this appeal. Most of the remaining acreage, 10,068 acres, is located in the Victory State Forest, with a small amount, 518 acres, in the Victory Basin, also known as Victory Bog. In 1999, the director of PVR appraised the forest land at $211.05 per acre and the basin land at $183.59 per acre. The land consists of both timberland and wetlands. The record indicates that approximately eighty percent of the forest land could be commercially productive, while the basin land has little commercial viability.

¶ 3. The 1999 appraisals by the director of PVR did not change the values from those arrived at in 1995, the year of the previous appraisal. In 1995, Robert Beaulieu, then a PVR district advisor, appraised the forest and basin lands to set their values for ANR's 1996 PILOT

payment.[2] The trial court found that to determine the value, Beaulieu used a mass appraisal methodology in the following manner:

a) He was physically on-site on approximately six occasions, but did not inspect the property other than what he was able to observe from his immediate location.

b) He reviewed Property Transfer Tax Returns (PTTR) for large acre sales lying in his district and in parts of adjoining districts to include more parcels[,] including Essex, Caledonia, Orleans, [and] parts of Orange and Washington counties for two years prior to 1995. From that review he selected timberland parcels over 300 acres or larger. He excluded any sale that appeared from the PTTR to be non-arm's length and two parcels with extreme values, one very high and one very low.

c) Using a base of 8 sales, Beaulieu calculated the per acre price for each sale, totaled the per acre values and divided by 8 to arrive at an unweighted average. This method is also referred to as a parcel-weighted mean which gives each parcel in the sales base equal weight. This produced an average per acre value of $328.

d) Beaulieu adjusted this average for land in the Victory Forest by applying two adjustment factors. He applied a .8 factor for location (a 20% reduction from the average property in his base properties) and a .8 factor for topography (20% reduction from the average property in his base properties). The location adjustment was made due to the relative remoteness of Victory Forest and the topography adjustment was made due to the steepness and wetness of the land.

This methodology yielded an appraisal of $211.05 per acre for the forest land and $183.59 per acre for the basin land as the basis for the 1996 ANR-land PILOT payment.

¶ 4. To determine the 1997 PILOT payment, district advisor Stearns Allen reviewed the value set by Beaulieu and recommended no

---

[2] There is another PILOT program for other state-owned property. 32 V.S.A. §§ 3701-3707. It has a separate appeals statute. *Id.* § 3704(b).

changes. Similarly, in 1998, district advisor Douglas Lay considered Beaulieu's valuation and did not increase the value of ANR's lands. The appraisal for 1999, the year in question, proceeded in a similar manner. In that year, district advisor John Westinghouse reviewed the Beaulieu values and recommended no adjustments. We note that there were no appraisal protocols that the district advisors were required to follow in any of these years. Following Westinghouse's appraisal, the Town appealed the valuation to the superior court.

¶ 5. During the appeal, the Town attacked the PVR appraisal, but did not introduce its own alternative appraisal. The State, in opposition, introduced independent evidence that supported the valuation and argued that the Town failed to meet its burden of proof because it did not introduce its own appraisal. Both sides presented several witnesses. In its findings and order, the trial court reviewed in detail both the valuation determined in 1995 and the subsequent decisions to continue that valuation for the 1997-99 PILOT payments.

¶ 6. Before addressing the merits of the appeal, the court considered the applicable standard of review. Observing that the standard of review for an appeal in the context of the PILOT program is not set forth in § 3708, and that this Court has not spoken on this issue, the court considered arguments from both sides. The State and the Town both agreed that the most analogous process to a PILOT appeal is an appeal of a lister's appraisal under 32 V.S.A. § 4467. Both parties were in accord that under § 4467 the trial court reviews the appraisal de novo; however, the Town further asserted that the PVR appraisal is given no deference whatsoever. The State, in contrast, contended that although a § 4467 appeal is de novo, a presumption of validity and legality attaches to the lister's work, and, therefore, to overturn the appraisal, the opponent must show that the valuation was either arbitrary and capricious or unlawful. The court accepted the State's view, and applied the arbitrary and capricious standard.

¶ 7. Turning to the merits of the appeal, the trial court, although recognizing that there is a significant amount of "individual discretion and judgment involved in appraisal methodology," rejected the 1999 appraisal. In reaching the conclusion that the 1999 appraisal was invalid, the court first addressed the 1995 Beaulieu appraisal. The court found this appraisal unreliable stating, "its ad hoc and essentially arbitrary nature reflects both the lack of any guiding standardized appraisal methodology or procedures on the part of PVR at that time, and an approach that relies primarily on vague general impressions rather than feasible empirical research and evaluation."

¶ 8. The court went on to detail the reasons for finding that the Beaulieu appraisal was unreliable: (1) he selected his eight comparable land tracts solely on the basis that they were larger than 300 acres and the PTTR indicated that they were timberland, but he neither determined the individual characteristics of the comparables nor learned their exact location or topography; (2) he did not consider the "forest potential" — timber rights, the existence of a forest management plan, or the impact of recent logging — in his calculation; (3) with respect to the eight comparable parcels, he used an unweighted average, so that every comparable was considered the same, an approach the court found "assumes that adjustments to the parcel values are made before averaging, to reflect differences in the individual parcels"; (4) his reduction adjustments, 20% for location and 20% for topography, were based on only a general familiarity with the district and not serious analysis; and (5) he did not consider a 1995 acquisition by the Nature Conservancy of a 2600 acre parcel, approximately 1100 acres of which is in the town of Victory, with the remainder in the adjoining towns of Concord and Lunenberg. The court felt that the third reason was a "disqualifying defect" in the property valuation. The court was particularly influenced by the fifth reason because the land acquired by the Nature Conservancy was transferred to the State and became part of the Victory Forest, and the price the Nature Conservancy paid, $275 per acre, was based on a full appraisal. Yet, Beaulieu disregarded the sale, reasoning that a sale to a government or conservation entity is suspect as to fair market value because these agencies may be willing to pay more than economic value for timberland. Thus, in 1996, he added the additional 1100 acres to the size of the Victory Forest parcel and valued it at the 1995 level of $211.05 per acre.

¶ 9. After reviewing the Beaulieu appraisal, the court addressed the subsequent reviews conducted by the various district advisors. The court concluded that these reviews were fatally flawed. Specifically, the court found that in 1997 Allen's review showed that he accepted the Beaulieu valuation "based upon general familiarity with the area" and had no knowledge of the lack of a comparable basis in the comparable parcels. Similarly, Lay reviewed the Beaulieu appraisal, but conducted no independent inquiry into the valuation. In like manner, Westinghouse only reviewed Lay's workfile and did not review the original appraisal. Also, Westinghouse was aware of two land transactions that he did not take into account when reviewing valuation for the 1999 PILOT payment. The first transaction, which was being finalized in

1999, involved the purchase by the State, federal government and private conservation groups of 137,000 acres owned by Champion Paper Company. The second transaction involved the sale of approximately 15,000 acres known as the "John Hancock" property to GMO Forestry for $247 per acre. This sale did not occur until after the valuation date, but the court found "it is a tract of timberland similar in size and location to Victory Forest."

¶ 10. Given these findings, the court ruled that there was insufficient evidence to show that the valuation of the basin land was inaccurate, but concluded that the 1999 valuation of the Victory Forest land was invalid. The court explained it found the 1995 appraisal questionable and arbitrary. Additionally, it found the subsequent reviews insufficient and in contravention of § 3708(a)(1), which requires an "appraisal value for the current year." Accordingly, the court found the valuation arbitrary and unlawful because it did not reflect the statutory mandate of § 3708. The court rejected the State's argument that the Town failed to meet its burden because it did not introduce an independent appraisal and found that "sufficient evidence was elicited during the course of the hearing to establish a fair market value based on the testimony of the numerous witnesses, most of whom were or are involved in appraising timberland property." The court then went on to arrive at its own valuation for the forest land.

¶ 11. In setting its own valuation, the court explained that it found two transactions highly relevant. The first was the 1995 acquisition by the Nature Conservancy of 2600 acres, 1100 of which are in the town of Victory. The land in this transfer was valued at $275 per acre. The second was the transfer in 1999 of approximately 15,000 acres to GMO Forestry at $247 per acre. The court noted that this second transaction was particularly relevant because it was an arm's length transfer of a large tract of timberland that was similar in size and location to the forest land. Finding this second transaction highly persuasive, the court adopted this valuation and set the forest land value at $247 per acre.

¶ 12. While the court's order explained in full detail the flaws in the 1995 valuation and its adoption in subsequent years, it did not address the additional evidence submitted by the State supporting the $211 per acre valuation. Accordingly, following the issuance of the order, the State moved pursuant to Vermont Rules of Civil Procedure 52(b) and 59(e) to amend the court's findings and judgment. The State requested

that the court adopt twenty-two additional findings.[3] Most of the requested findings related to additional land valuations and transactions that supported the $211 per acre valuation. The court denied the State's motion with no explanation. This appeal followed.

¶ 13. The State argues that the trial court erred because: (1) it disregarded the additional evidence supporting the $211 valuation and based its decision primarily on perceived flaws in the Beaulieu valuation; (2) it did not accord any deference to the value set by the director of PVR; (3) it chose a value of $247 per acre based on a sale that occurred after the 1999 valuation date and ignored substantial evidence introduced by the State supporting a lower value; and (4) it failed to make findings of uncontested fact in its initial order and failed to amend its findings to incorporate those facts. The State has not appealed the court's determination that the PVR valuation was arbitrary and capricious.

¶ 14. We conclude that this appeal is governed by our determination of the proper standard of review for appeals from PVR appraisals under § 3708, and do not reach the other issues raised by the State. As the trial court observed, § 3708 does not state the standard of review that the court must use when hearing a valuation appeal from PVR, and we have not addressed the issue. In essence, the superior court ruled that it could not uphold the PVR valuation under any standard of review and that it was required, therefore, to determine the proper valuation. We review the court's interpretation of the law de novo. *In re Beckstrom*, 2004 VT 32, ¶ 9, 176 Vt. 622, 852 A.2d 561 (mem.). Based on the arguments of the parties, and our own examination of the law, there are three possible standards of review for appeals to the superior court pursuant to § 3708. We address each possibility in turn and conclude that the Legislature intended appeals under § 3708 to be treated as appeals from other agency action and apply an arbitrary and capricious standard of review.

¶ 15. First, the Town contends that the superior court should review the director's appraisal de novo, and then establish the property value based on a preponderance of the evidence. The Town argues that de novo review is proper when there is neither an adjudicatory proceeding at the agency level, nor a definitive record of the admin-

---

[3] The State also requested that the court make these findings in its post-trial request for findings.

istrative process. The Town contends that the superior court traditionally reviews factual and legal disputes de novo, and the statute's silence on the issue indicates that the Legislature intended the same standard here.[4] Although the Town makes some important points, we disagree with its position.

¶ 16. To preserve the appropriate separation of judicial and executive powers, we presume that judicial review of administrative decisions is deferential absent a clear statement of contrary intent. See *Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294-95, 415 A.2d 216, 218 (1980). De novo review, whereby the superior court would simply substitute its judgment for that of the director, necessarily usurps power delegated to the executive branch; therefore that standard is inappropriate unless the statute expressly so provides. *Id.* at 295, 415 A.2d at 219. Indeed, for this reason, we held that a tax appeal statute worded similarly to § 3708(d) does not authorize de novo review. See *Piche v. Dep't of Taxes*, 152 Vt. 229, 233, 565 A.2d 1283, 1285 (1989) (applying 32 V.S.A. § 5885(b)).

¶ 17. We recognize that review on the record is more appropriate in contested cases where there has been an adjudication in the agency. See 3 V.S.A. § 801(b)(2) (defining "contested case" as a proceeding in which legal rights, privileges or duties are required to be determined by an agency "after an opportunity for hearing"). We have held, however, that the presumption against de novo review also applies where there has been no hearing in the agency and the statute says only that review will occur "by appeal." *Conservation Law Found. v. Burke*, 162 Vt. 115, 126, 645 A.2d 495, 501-02 (1993). This policy is rooted in the separation of powers between the judicial and executive branches. *Id.* at 126, 645 A.2d at 502. Consistent with this policy, we recognize that this case involves an area in which the agency, PVR, has special expertise. See 32 V.S.A. § 3411(5), (11) (requiring director of PVR to "provide technical assistance and instruction" to town listers on a uniform appraisal system; director is to appraise property where directed by law); *Town of Killington v. Dep't of Taxes*, 2003 VT 88, ¶ 5, 176 Vt. 70, 838 A.2d 91 (recognizing that courts normally give substantial deference to an agency decision that "involves highly complicated valuation and equalization method-

---

[4] Section 3708 states, in pertinent part: "The selectboard of a town aggrieved by the appraisal of property by the division of property valuation and review under this section may … appeal from that appraisal to the superior court of the district in which the property is situated." 32 V.S.A. § 3708(d).

ologies"). We also note that although both parties have argued that the statutory scheme for property tax appeals is similar in some ways to § 3708, that scheme explicitly states that appeals of property tax appraisal to superior court are determined de novo. See 32 V.S.A. § 4467 ("Upon appeal to the director or the court, the appraiser or court shall proceed de novo and determine the correct valuation of the property ...."). We hold, therefore, that although § 3708 authorizes the superior court to review PVR decisions by appeal, it does not authorize de novo review.[5]

¶ 18. The second possibility is that the review standard should be the same as that for property tax appeals under 32 V.S.A. § 4467. Although the parties differ on what § 4467 review entails, each looks to this statute in part to support its position. As noted above, § 4467 calls for de novo review. We have held, however, that in such appeals the town appraisal is presumed valid until the taxpayer produces some evidence to the contrary. *Littlefield v. Town of Brighton*, 151 Vt. 600, 601-02, 563 A.2d 998, 999-1000 (1989). At that point, the presumption disappears and the court reviews the appraisal de novo, with the taxpayer bearing the burden of persuasion. *Id.* at 601, 563 A.2d at 1000. We emphasize, however, that "[t]he presumption of validity is neither evidence nor an evaluation of the quality or credibility of evidence" and "[t]he standard by which the trier must weigh the facts sought to be used to overcome the presumption is not one of credibility, but rather one of admissibility." *Knollwood Bldg. Condos. v. Town of Rutland*, 166 Vt. 529, 545, 699 A.2d 31, 42 (1997). Thus, the presumption is a "bursting bubble," *Vt. Elec. Power Co. v. Town of Vernon*, 174 Vt. 471, 473, 807 A.2d 430, 434 (2002) (mem.), used solely to locate the burden of production and specify the consequences of failing to meet that burden, V.R.E. 301(a), (c). Although the State describes § 4467 review as deferential, we do not believe that characterization is accurate.

¶ 19. Using the § 4467 approach does have some advantages, as the appeal process undertaken in property taxation valuation disputes is familiar to courts, towns and the PVR, and the decision in dispute — a property valuation appraisal — would often be the same in both instances. In fact, this appears to be the standard the superior court

---

[5] We further note that the Town itself did not treat this appeal as a trial de novo of the land's value, because it failed to introduce evidence to support its own appraisal of the land's value.

actually adopted in this case, as it first found that the Town had overcome the presumption of the validity of the PVR appraisal, and then issued its own determination of the Victory State Forest property's value.

¶ 20. There are important differences, however, between appeals brought pursuant to § 4467 and those taken under § 3708. As our analysis of de novo review, *supra*, concludes, we are unwilling to adopt a form of de novo review without explicit statutory support. While § 4467 explicitly provides for de novo review, § 3708 does not. The Legislature could have included similar language in § 3708 — or referred to § 4467 — if it intended de novo review in this context. Further, a town official prepares the property tax appraisals that a citizen may challenge under § 4467, while a state agency appraises land for purposes of the PILOT program that the town then may appeal under § 3708. This reversal of roles reflects the different purposes the two statutory schemes serve. Towns use property tax appraisals to determine the amount of *tax* a landowner owes, while the State uses PILOT appraisals to calculate the *benefit*, see 32 V.S.A. § 3702 (describing payments under similar program for other state-owned property as "state grant in lieu of property taxes"), it will confer upon an affected town. Because the appraisals serve different purposes, it is understandable that the Legislature might intend the relevant appeals to proceed with different standards of review. Moreover, the Legislature may believe that the director of PVR has a different level of expertise in appraising real property than a local lister, and, therefore, is entitled to a more deferential review standard.

■ ¶ 21. For the above reasons, we conclude that the Legislature did not intend that § 3708 appeals be governed by the same standard and procedures that it established for § 4467 appeals. In particular, the statutory language is so different that a different standard of review must have been intended. See *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001) (stating that court must construe statute to implement the intent of the Legislature).

■ ¶ 22. The third possibility is that the Legislature intended the superior court to treat § 3708 appeals just as it treats appeals from other administrative actions — that is, it should review the record and overturn the agency's determination only if it finds it arbitrary and capricious. See, e.g., *Burke*, 162 Vt. at 126, 645 A.2d at 502 (noting that nature of review is determined by Legislature and presuming that review will be on the record and not de novo). For many of the reasons

we have already discussed, this standard of review best comports with our precedent and is the one we adopt today.

¶ 23. We addressed a similar question in *Burke,* where the Conservation Law Foundation appealed ANR's decision to grant a medical waste incinerator an air pollution control permit. *Id.* at 118-20, 645 A.2d at 497-98. In that case, like this one, the relevant statute did not specify the standard of review, and deferential review was difficult because the precise contents of the administrative record were unclear. *Id.* at 126, 645 A.2d at 502. Nonetheless, we upheld the superior court's decision to conduct a deferential review of the record below. *Id.* In so holding, we looked to our presumption against de novo review, and to the same basic principles of statutory interpretation discussed above. *Id.* Many of the same considerations that guided us in *Burke* lead us to conclude that § 3708 provides for deferential review in this case. Specifically, we are persuaded by the statutory language, the technical nature of the subject matter and the expertise of PVR in this area.

¶ 24. Here, the superior court explicitly stated its intention to review the appraisal for arbitrary and capricious action, found PVR's valuation to be arbitrary or capricious, but then proceeded to establish a new property valuation based on its de novo evaluation of the evidence. Once the court determined that the State had acted arbitrarily and capriciously, because its methodology was fundamentally flawed, it should have remanded the matter back to PVR to determine the valuation anew after correcting the flaws the court found. See *Burke,* 162 Vt. at 128, 645 A.2d at 503 (stating that when court reverses agency decision based on the insufficiency of the record, "such action ... should be accompanied by a remand to allow the agency to cure the deficiency"). Because the State has not appealed the court's decision that the valuation of the forest land was arbitrary and capricious, we can direct the proper remedy in our mandate.

*The order affirming the valuation of the land in the Victory Basin is affirmed. The order setting the valuation of the land in Victory State Forest is vacated. The matter is remanded to the Director of Property Valuation and Review for redetermination of the appraisal of the land in Victory State Forest pursuant to 32 V.S.A. § 3708(a) and in light of the findings and conclusions of the Essex Superior Court with respect to the appraisal that was appealed.*