2013 VT 23

# In re Investigation into Regulation of Voice Over Internet Protocol (VoIP) Services

[70 A.3d 997]

No. 12-109

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Eaton, Supr. J., Specially Assigned

Opinion Filed March 29, 2013

*Andrew Raubvogel* and *Karen Tyler* of *Dunkiel Saunders Elliott Raubvogel & Hand PLLC*, Burlington, and *Samuel L. Feder, Luke C. Platzer* and *Adam G. Unikowsky* of *Jenner & Block LLP*, Washington, D.C., for Appellant Comcast Phone of Vermont, LLC.

*Morris L. Silver*, Benson, for Appellee Central Vermont Public Service Corporation.

*Megan R. Ludwig*, Montpelier, for Appellee Vermont Department of Public Service.

*Cassandra LaRae-Perez* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Appellees The Eight Vermont Independent Local Exchange Carriers.

*Nolan C. Burkhouse* and *David M. Pocius* of *Paul Frank + Collins P.C.*, Burlington, for Amici Curiae Verizon, AT&T and the Voice on the Net Coalition.

*Glenn S. Richards*, Washington, D.C., for Amicus Curiae the Voice on the Net Coalition.

*Scott H. Angstreich* and *Emily J. Kennedy* of *Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.*, Washington, D.C., and *Alexander W. Moore*, Boston, Massachusetts, for Amicus Curiae Verizon.

*James A. Huttenhower*, Chicago, Illinois, for Amicus Curiae AT&T.

¶ 1. **Reiber, C.J.** This appeal concerns whether the Vermont Public Service Board has jurisdiction to regulate interconnected Voice over Internet Protocol (VoIP) services provided in Vermont. The Board concluded that fixed VoIP is a "telecommunications service" under Vermont law and Vermont regulation of VoIP is not preempted by federal law because intrastate calls can be separately identified. The Board deferred consideration of what type of regulation to impose to a separate phase of the proceeding. On appeal, Comcast Phone of Vermont, LLC[1] argues that the Board erred in not addressing whether interconnected fixed VoIP is an information service or telecommunications service under federal law because, according to Comcast, VoIP is an information service and therefore any regulation is preempted by federal law. We agree that the Board must reach this question and remand for further proceedings.

¶ 2. Some background is necessary for understanding the issues raised in this appeal. Traditional phone service operates on a public switched telephone network (PSTN). That network relies on circuit-switched technology, which sets up a dedicated line between the sender and receiver. A traditional telephone converts the caller's voice into an electrical signal that travels on a copper line over the PSTN. When the analog signal reaches the receiver's telephone, it is converted back into audible format. Users on the network are assigned a ten-digit North American Numbering Plan (NANP) number that corresponds to their geographic location.

¶ 3. VoIP technology is simply another mechanism for delivering voice communication. VoIP transmits the voice data over internet

---

[1] Comcast Phone of Vermont, LLC is a Vermont-certified telecommunications carrier that provides the services for Comcast IP, a retail VoIP service provider that delivers to customers Comcast Digital Voice (CDV) — a VoIP service. These affiliated entities are referred to collectively and individually as Comcast in this decision.

protocol (IP) instead of through traditional telephone lines on the PSTN. The voice data is converted into digital bits which are placed in packets and sent over the same pathways as internet data. VoIP can be provided over the public internet or a private IP network. The packets of information run through various computers, routers, and switches before they are reconstituted at their destination. VoIP-to-VoIP communications are those that originate and terminate at IP addresses existing in cyberspace without regard to the person's geographic location. *Minn. Pub. Utils. Comm'n v. FCC*, 483 F.3d 570, 574 (8th Cir. 2007). In contrast, interconnected VoIP involves communication of VoIP to or from a traditional PSTN landline connection. Interconnected VoIP is defined as a service that provides real-time, two-way voice communication over a broadband connection from the user's location using special equipment that permits the user to receive calls from or terminate calls on the PSTN. See 47 C.F.R. § 9.3 (2009).

¶ 4. Interconnected VoIP telephony takes different forms. Nomadic VoIP service may be used from anywhere a caller can access a broadband connection, without regard to the identity of the broadband provider. When nomadic service is used, it is not possible to determine the specific geographic endpoints of the call. Fixed VoIP service originates at a permanent location known to the user and the provider. The user places a call with a telephone by using special equipment that converts the sound into information that can travel on the IP. For the user, the experience resembles placing a call using a traditional telephone.

¶ 5. The service relevant to this appeal is provided by Comcast.[2] Comcast has a network of cables in Vermont and using those cables provides high-speed internet, and interconnected VoIP services called Comcast Digital Voice (CDV). To use CDV, Comcast leases to customers an embedded multimedia terminal adaptor (eMTA), which is connected to the customer's phone and converts the voice signal into a format that can travel on the internet over the cable line. To place a call, the CDV customer uses a traditional telephone connected to the eMTA. The eMTA converts

---

[2] The hearing officer and the Board also considered AT&T's VoIP service. The Board found that this service was nomadic and that AT&T had no means to verify the location of the users. The Board determined that since it was impossible to separate the intrastate and interstate components of this service, the service was exempt from state regulation. This part of the Board's decision was not appealed.

the call to IP in the case of an originating call or from IP in a terminating call. CDV calls may terminate in traditional telephone service subscribers, or may remain entirely on the Comcast network if terminating to another CDV customer. Comcast's CDV VoIP telephony is a fixed service as it requires the end-user to use it from a specific geographic location known to Comcast. The issue before the Board was whether the Board could regulate this service or if regulation was preempted by federal law.

¶ 6. Regulation of telecommunications is done through a partnership between federal and state authorities. *In re Verizon New England Inc.*, 173 Vt. 327, 332, 795 A.2d 1196, 1200-01 (2002). Under federal law, the Federal Communications Commission (FCC) has authority to regulate interstate and foreign telecommunications services, while the states retain jurisdiction over intrastate services. 47 U.S.C. §§ 151, 152(b).[3] Over the years, as methods of communication changed, the FCC sought to apply the terms of the Communications Act to newer technologies by creating two categories of services — basic and enhanced. *Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Servs. are Exempt from Access Charges*, 19 FCC Rcd. 7457, 7459 (April 21, 2004). The FCC defined basic service as the transmission of "information without net change in form or content." *Id.* In contrast, enhanced service applied to a service involving any sort of data alteration or manipulation "that changes the form or content of the transmitted information." *Id.* The FCC concluded that enhanced services were free from Title II regulations that applied to common carriers to encourage new data processing features.[4] *Id.* at 7460. In 1996, Congress amended the

---

[3] The Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified throughout 47 U.S.C. §§ 151-609), amended the Communications Act of 1934, 48 Stat. 1064, the original legislation establishing the FCC and setting forth the regulatory scheme.

[4] Title II of the Telecommunications Act relates to common carrier regulation. This is the main source of the FCC's authority to regulate telecommunications services. Under Title I of the Act, the FCC also is authorized to "perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions." 47 U.S.C. § 154(i). While this Title I power is not a separate authorization of power to act, it can be used to regulate areas that are "reasonably ancillary" to its assigned responsibilities. *United States v. Sw. Cable Co.*, 392 U.S. 157, 178 (1968). Although the FCC has not determined that interconnected VoIP is a telecommunications service, the FCC has used its Title I power to regulate VoIP services, such as by requiring

Act to address new developing technologies and services, and utilized the terms "telecommunications service" and "information service." See 47 U.S.C. § 153(53), 153(24). The FCC construed the terms "telecommunications service" and "information service" as having the same meanings as basic and enhanced services, respectively. *AT&T's Phone-to-Phone IP Telephony Servs.*, 19 FCC Rcd. at 7460-61. Thus, "telecommunications services and information services are separate and distinct categories, with Title II regulation applying to telecommunications services but not to information services." *Id.* at 7461. The result of designating VoIP as an information service would mean that the regulations in Title II of the Telecom Act do not apply. *Federal-State Joint Bd. on Universal Serv.*, 13 FCC Rcd. 11501, 11507-08 (April 10, 1998).

■ ¶ 7. The 1996 Act, however, preserved the dual-jurisdictional regimen between federal and state authorities. *Verizon New England*, 173 Vt. at 331, 795 A.2d at 1200. Thus, Vermont retains authority to regulate telecommunications within the state as long as such regulation is not inconsistent with federal law. *Id.* at 332, 795 A.2d at 1200-01. The Legislature has delegated this authority to the Board by authorizing it to regulate companies "offering telecommunications service to the public on a common carrier basis." 30 V.S.A. § 203(5). Telecommunications service is broadly defined by Vermont law as "the transmission of any interactive two-way electromagnetic communications, including voice, image, data and information." *Id.* The statute provides that transmission of electromagnetic communications "includes the use of any media such as wires, cables, television cables, microwaves, radio waves, light waves or any combination of those or similar media." *Id.*

¶ 8. In April 2007, the Department of Public Service sent a letter to the Board recommending that it open a generic investigation into VoIP services to clarify the rights and responsibilities of VoIP service providers in Vermont. The Board opened its investigation in May 2007 and appointed a hearing officer to conduct the proceedings. Several companies participated in the proceedings, including Comcast and Verizon. Several entities were also permitted intervenor status, including a group of independent Vermont local exchange carriers, Central Vermont Public Service

these providers to have 911-type services. *IP-Enabled Services — E911 Requirements for IP-Enabled Service Providers*, 20 FCC Rcd. 10245, 10262 (June 3, 2005).

Corporation, City of Burlington Electric Department, Stowe VoIP, LLC, and AT&T.

¶ 9. The parties agreed to divide the proceeding into phases. In Phase I, the Board was confined to factfinding and determining the extent of its jurisdiction, and in Phase II, the Board was supposed to consider to what extent it should exercise its jurisdiction. A technical hearing was held in November 2008. Before the hearing officer, the Department argued that VoIP services are telecommunications services under Vermont law, and that fixed services are intrastate and not preempted by federal law. Comcast argued that VoIP is an "information service" as defined by federal law and, thus, the state is wholly preempted from regulating it.

¶ 10. The hearing officer found, based on the testimony of expert witnesses, that interconnected VoIP is covered by Vermont's definition of "telecommunications services." Thus, the hearing officer concluded that the Board had jurisdiction to regulate the service. The hearing officer explained that this made sense as a matter of policy because VoIP services compete directly with traditional voice services and are marketed to replace them. The hearing officer concluded that the Board's authority to regulate VoIP was not preempted by federal law to the extent that the provided service was intrastate — that is for fixed VoIP service. In contrast, the hearing officer held that regulation of nomadic service, which could not be separated into interstate and intrastate components, was preempted by federal law. Thus, the hearing officer found that the nomadic service offered by AT&T was not subject to state regulation, but Comcast's fixed service was. The hearing officer rejected the notion that it needed to determine whether Comcast's CDV service was a telecommunications or information service under federal law. The hearing officer concluded that this issue was not relevant in Phase I, which focused generally on the Board's jurisdiction. The hearing officer noted that the question could be addressed in Phase II to determine whether and to what extent any particular proposed state regulations conflicted with federal law.

¶ 11. Comcast moved to reopen the record to submit additional evidence from its expert. The hearing officer denied the motion, explaining that this evidence largely was intended to support Comcast's argument regarding federal preemption, which the hearing officer had concluded was not relevant in that stage of the proceeding.

¶ 12. The matter was referred to the entire Board. The Board adopted the hearing officer's findings and conclusions. For three main reasons, the Board rejected Comcast's argument that the Board must first determine whether VoIP is an "information service" under federal law. First, the Board explained that the state has authority to act unless otherwise preempted and that because CDV offered intrastate service, it was within the Board's jurisdiction. The Board read the FCC's prior decisions as expressing a policy against federal preemption for VoIP services that can be separated into intrastate calls. Second, the Board found it significant that the FCC had taken the federal classification under consideration, and wanted to defer a decision to let the FCC make an initial determination about preemption. Finally, the Board explained that in the second phase of the proceedings it would consider what type of regulations to impose and would at that time address whether those specific regulations were preempted by federal law. Comcast appeals.[5]

¶ 13. On appeal, Comcast argues that the Board erred in holding that it could resolve the jurisdictional issue without first determining whether CDV is an information or telecommunications service under federal law. Comcast also contends that CDV is indeed an information service under 47 U.S.C. § 153(24) and therefore the service is entirely under the authority of FCC and not subject to state regulation. Comcast requests that the matter be remanded to the Board for a determination of whether CDV is an information service and to allow Comcast to submit certain excluded evidence.

■ ¶ 14. Thus, the critical question is whether the Board's authority to regulate fixed interconnected VoIP telephony is preempted by federal law. There are three main situations in which federal law can preempt state law: express preemption; field preemption; and conflict preemption. *Sw. Bell Wireless Inc. v.*

---

[5] The Board issued a final Phase I decision in October 2010. Comcast filed a motion to amend that order, which was denied by the Board in February 2011. Comcast then attempted to appeal the Phase I order to this Court. We dismissed the appeal as premature, noting that there was no final judgment and Comcast had neither requested nor received permission for an interlocutory appeal. The parties engaged in negotiations that did not prove fruitful. In November 2011, the Department requested that the Board deem the Phase I order a final judgment. The Board granted the motion and issued an order on February 2, 2012, making the Phase I order issued in October 2010 a final judgment. This appeal followed.

*Johnson Cnty. Bd. of Cnty. Comm'rs,* 199 F.3d 1185, 1190 (10th Cir. 1999) (explaining different ways state law can be preempted). Express preemption occurs when a federal statute explicitly reveals congressional intent to preempt state law. *Id.* In addition, federal law can implicitly preempt state law. Field preemption occurs when the federal regulatory scheme is so pervasive as to make no room for concurrent state regulation. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982); see *Grice v. Vt. Elec. Power Co.,* 2008 VT 64, ¶ 15, 184 Vt. 132, 956 A.2d 561. Conflict preemption arises when there is no federal law to wholly supplant state regulation, but the specific state law obfuscates the purpose or objectives of a federal law. *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 491-92 (1987); *Grice,* 2008 VT 64, ¶ 15. There is a presumption that the power of the state has not been superseded by a federal act, and " '[t]he party seeking to overcome this presumption bears a heavy burden.' " *Grice,* 2008 VT 64, ¶ 15 (quoting *In re Vt. Ry.,* 171 Vt. 496, 500, 769 A.2d 648, 652 (2000)).

¶ 15. The parties disagree about the type of preemption applicable in this case. According to Comcast and the amici supporting its case, VoIP is an information service under federal law and, as such, regulation of VoIP is expressly preempted by federal law. Thus, Comcast contends that this threshold question must be decided.

¶ 16. The Board did not discern any express preemption in the Telecommunications Act. The Board considered field preemption and concluded that because fixed services like CDV can be separated into interstate and intrastate calls, Congress had not wholly displaced the state's authority to regulate the field of VoIP telephony. The Board recognized that particular regulations may be precluded by conflict preemption, but concluded that this question would be addressed during the second phase of the proceedings when particular regulations were proposed. The Board explained:

> We have not flatly ruled, as Comcast Phone claims, that because jurisdictional separation is possible in the case of fixed VoIP, the FCC has no power at all to preempt our regulation of Comcast Phone's CDV service pursuant to Vermont state law. . . . We remain mindful that conflict preemption may yet attach to bar the exercise of our regulatory jurisdiction based on Vermont law, in the event

that a regulatory proposal is put forward in Phase II that proves to be "irreconcilable" with pertinent federal law or lawful FCC regulation.

¶ 17. The Board described its analysis as a "two-step approach" mirrored on the analysis utilized by the FCC in *Vonage Holdings Corp.*, 19 FCC Rcd. 22404 (Nov. 12, 2004).[6] In that case, the Minnesota Public Utilities Commission had applied its traditional telephone company regulations to a VoIP service offered by Vonage called DigitalVoice. DigitalVoice provided subscribers with the ability to originate and receive voice communications over the internet. The service assigned subscribers a NANP number that could be used from any location where the subscriber had access to a broadband connection. *Id.* at 22406. Because the service was portable, Vonage could not isolate where a subscriber was located when a call was placed.

¶ 18. The FCC concluded that DigitalVoice was a mixed service operating both interstate and intrastate, but because the two components could not be separated, state regulation was preempted by federal law. *Id.* at 22411. The FCC noted that allowing state regulation "would thwart federal law and policy." *Id.* This was in keeping with the FCC's policy that when services are capable of communications between intrastate and interstate end points, this kind of mixed-use service is subject to dual federal-state jurisdiction "except where it is impossible or impractical to separate the service's intrastate from interstate components and the state regulation of the intrastate component interferes with valid federal rules or polices." *Id.* at 22413. This is referred to as the impossibility exception under § 152(b) of the Telecom Act. *Id.* at 22414-15; see 47 U.S.C. § 152.

¶ 19. The FCC specifically did not reach the question of whether VoIP telephony like DigitalVoice is a telecommunications or information service under the Act. *Vonage*, 19 FCC Rcd. at 22413. The determination was not necessary given the FCC's resolution of the case on the impossibility exception. The FCC

---

[6] The Board also relied on another FCC decision regarding whether states could require interconnected VoIP providers to contribute to their Universal Service Fund (USF). *Universal Serv. Contribution Methodology*, 25 FCC Rcd. 15651 (Nov. 5, 2010) (declaratory ruling) [hereinafter *USF*]. Without reaching the question of whether VoIP was an information service, the FCC concluded that state universal service fund rules for nomadic interconnected VoIP were not preempted as long as the requirements were not inconsistent with federal law. *Id.* at 15657-58.

explained that "to the extent that other VoIP services are not the same as Vonage's but share similar basic characteristics, we believe it highly unlikely that the Commission would fail to preempt state regulation of those services to the same extent." *Id.* at 22405. Thus, the FCC left open the possibility, though unlikely, that some other VoIP service — one that did not resemble DigitalVoice — would not be preempted by federal law.

¶ 20. Based on *Vonage*, the Board resolved the preemption question by first addressing whether the impossibility exception applied or if CDV could be separated into interstate and intrastate components. The Board concluded that unlike the Vonage VoIP service, Comcast's VoIP telephony was a fixed service and Comcast had the ability to discern where calls originated. Based on this fact, the Board concluded that the Board's regulation was not preempted. Comcast challenges that decision.

¶ 21. On appeal, there is a "strong presumption that orders issued by the Public Service Board are valid." *In re E. Ga. Cogeneration Ltd. P'ship*, 158 Vt. 525, 531, 614 A.2d 799, 803 (1992). We accord "great weight to the Board's interpretations of its own regulations." *Id.* The Board's determination of issues within its area of particular expertise is afforded "great deference," and "[t]he burden of proving that findings and conclusions of the Board are clearly erroneous falls to the appealing party." *Id.* at 532, 614 A.2d at 803.

¶ 22. Under this backdrop, we examine the Board's decision. As an initial matter, we hold that the Board did not err in concluding that VoIP telephony, and CDV in particular, falls within the Board's purview for purposes of Vermont law because Comcast is "offering telecommunications service to the public on a common carrier basis." 30 V.S.A. § 203(5). Indeed, the parties do not dispute this point. In addition, we reject amici's argument that the Board erred in concluding that CDV can be separated into intrastate and interstate components. This is a factual question. The Board has substantial discretion in evidentiary matters, and we will affirm the Board's findings "unless clearly erroneous." *Id.* § 11(b); *In re Cent. Vt. Pub. Serv. Corp.*, 141 Vt. 284, 288, 449 A.2d 904, 907 (1982). The Board's finding on this point was amply supported by evidence in the record demonstrating that CDV calls originate from a fixed location that can be identified by the provider. Thus, there are no grounds to disturb the Board's

finding. See *Minn. Pub. Utils. Comm'n*, 483 F.3d at 579 (explaining that question of "whether VoIP services can be separated into interstate and intrastate components is largely fact-driven inquiry requiring a high level of technical expertise" and therefore agency making determination is entitled to "high level of deference").

¶ 23. We also discern no error in the Board's general approach to the preemption question. Comcast argues that the Board should have determined whether CDV is an information or telecommunications service under federal law as a threshold matter. We see no reason why the Board was required to do this analysis prior to determining if CDV can be separated into distinct interstate and intrastate components since this issue can also be dispositive of the preemption question. See *Minn. Pub. Utils. Comm'n*, 483 F.3d at 578 (holding that it was sensible for FCC to address impossibility exception first since that issue was dispositive of whether FCC has authority to preempt state regulation of VoIP services).

¶ 24. The more difficult issue is whether the Board erred in declining to reach the question of whether VoIP is an information service or telecommunications service under federal law. As explained above, Comcast contends that VoIP is indeed an information service and, as such, state regulation is expressly preempted. While we do not decide the issue of VoIP's classification, we disagree with Comcast that the federal designation of VoIP as an information service would necessarily result in express preemption of all state regulation. At a basic level, if VoIP is an information service then the result is that the regulations in Title II of the Telecom Act do not apply. See *Federal-State Joint Bd. on Universal Serv.*, 13 FCC Rcd. at 11543 (noting that information services not subject to Title II regulations). Certainly, the FCC has a "long-standing national policy of nonregulation of information services." *Vonage Holdings Corp.*, 19 FCC Rcd. at 22416. Nonetheless, we disagree with Comcast that designation of CDV as an information service will result in express or field preemption. Information services are not wholly exempt from regulation, and state regulations are preempted only to the extent they conflict with federal law or policy.

¶ 25. Along these lines, DPS argues that it is not necessary to reach the federal question because a determination that CDV is an "information service" will not automatically preempt the

Board's jurisdiction. As described above, we agree as to type of preemption. Illustrative, as pointed out by DPS, is the FCC's decision in *Petition for Declaratory Ruling that Pulver.com's Free World Dialup is Neither Telecommunications Nor a Telecommunications Service*, 19 FCC Rcd. 3307 (Feb. 19, 2004) [hereinafter *Pulver*]. In *Pulver*, a company providing a voice-to-voice internet application called Free World Dialup (FWD) filed a petition with the FCC seeking a declaration that it was neither a telecommunications service nor telecommunications as defined in the Act. *Id.* at 3307. The service provided an internet application that was not dependent on the user's location and could be used anywhere there was a broadband internet connection. Users downloaded Pulver software and contacted each other with an assigned FWD number, not a NANP number. The FCC determined that the application was not telecommunications or a telecommunications service, but an information service. *Id.* at 3312-13. In other words, the FCC made the same determination that Comcast urges in this case.

¶ 26. Although the FCC designated FWD as an "information service," it did not conclude that any state regulation was preempted through field preemption. The FCC described the resulting state preemption in the following manner: "We determine, consistent with our precedent regarding information services, that FWD is an unregulated information service and any state regulations that seek to treat FWD as a telecommunications service or otherwise subject it to public-utility type regulation would almost certainly pose a conflict with our policy of nonregulation." *Id.* at 3316. Thus, the FCC viewed federal preemption of that information service as a question of conflict preemption and not express or field preemption.

■ ■ ¶ 27. The FCC has on other occasions referred to preemption of information services as a type of conflict preemption. In *USF*, the FCC explained:

> We have not determined whether interconnected VoIP services should be classified as telecommunications services or information services under the Communications Act. Nor do we see any need to do so here. The express obligation of telecommunications carriers under section 254(f) to support state universal service programs does not limit state authority to extend contribution require-

ments on interconnected VoIP providers, regardless of their classification, so long as such requirements do not *conflict with federal rules and policies.*

*USF*, 25 FCC Rcd. at 15661 n.63 (emphasis added). Thus, we conclude that the proper lens through which to view the preemption issue is a conflict preemption analysis. See *Verizon New England*, 173 Vt. at 338, 795 A.2d at 1205 (analyzing whether state regulation of information service is preempted by conflict with federal law).

¶ 28. Nonetheless, we disagree that the Board can avoid the federal classification issue. Even if, as the Board explains, not *all* regulations will be preempted by CDV's designation as an information service, certainly *some* amount of preemption will occur, including any Title II-type regulation. See *Pulver*, 19 FCC Rcd. at 3318-19. This is an important question that cannot be avoided prior to the Board considering a regulatory regime in Phase II of this litigation.

■ ¶ 29. The reasons stated by the Board for not reaching this question lack merit. First, the Board's reliance on *Vonage* and *USF* are misplaced. The Board notes correctly that in both cases the FCC did not reach the question of whether VoIP is an information or telecommunications service. But the fact that the FCC did not reach the question in those cases does not dictate the same outcome in this case because it was not necessary in either situation. In *Vonage*, the FCC concluded that the impossibility exception applied. Therefore, preemption was established, and there was simply no need to delve further into the question of whether state regulation was preempted through another means. In contrast, here Comcast's service *can* be separated into a unique intrastate component; thus, the impossibility exception does not apply and the preemption issue remains unresolved.

¶ 30. Further, in *USF*, there was no need for the FCC to reach the question of whether VoIP services were telecommunications services or information services because of the unique statutory provisions regarding universal service fees. Under 47 U.S.C. § 254(d), universal service fees may be applied not just to telecommunications services, but also to "[a]ny other provider of interstate telecommunications . . . if the public interest so requires." Therefore, designation as an information service was not dispositive.

¶ 31. The Board's desire to defer the decision to the FCC also does not provide a reason for avoiding the issue. To be sure, the Board should defer to the FCC's classification decision, if and when the FCC decides the issue. As the Board correctly recounted, the FCC began an initiative to address IP-enabled services, but the FCC has yet to classify interconnected VoIP as either an information service or telecommunications service. See *IP-Enabled Servs.*, 19 FCC Rcd. 4863 (March 10, 2004). At this time, however, there is no decision to which the Board can defer. In the interim, the Board is fully capable of deciding the scope of federal law and determining whether that law preempts state regulation, and there is no reason not to do so. See *Verizon New England*, 173 Vt. at 335-38, 795 A.2d at 1203-05 (reviewing Board's decision that state regulation was not preempted by federal law).

¶ 32. Finally, we address Comcast's argument that the record compels a finding as a matter of law that CDV is an information service. We decline to resolve this issue. The determination involves resolving factual questions and applying those facts to the statutory language. The Board is more properly situated to addressing this question in the first instance, and therefore we remand the matter to the Board.

¶ 33. Comcast also urges us to vacate the Board's exclusion of Comcast's supplemental post-hearing testimony. The Board denied this motion on the grounds that the information related to the federal classification question and was not necessary to decide the case. In light of our decision that the Board must reach the classification question, on remand, the Board should reconsider whether to grant Comcast's motion to supplement the evidentiary record.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*