NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 122

No. 2016-059

In re J.H.                                                          Supreme Court

                                                                   On Appeal from
                                                                   Human Services Board

                                                                   September Term, 2016


Charles A. Gingo, Chair

William H. Sorrell, Attorney General, Montpelier, and Seth A. Steinzor, Assistant Attorney
  General, Waterbury, for Appellant.

Christine Speidel, Springfield, and W. David Koeninger, Bennington, Vermont Legal Aid, Inc.,
  for Amicus Curiae Office of the Health Care Advocate.


PRESENT:   Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.   **REIBER, C.J.**   The State appeals the Human Services Board's decision reversing a determination by the Economic Services Division of the Department for Children and Families (DCF) that J.H. cannot be considered for a subsidized qualified healthcare plan on the Vermont Health Connect exchange because she has health insurance available to her through her husband's employer. The appeal turns on the question of whether, under controlling federal law, healthcare insurance must be considered available to J.H. through her husband's employer even though her husband elected not to enroll in his employer's plan and she herself could not enroll in the plan unless he did. We affirm the Board's ruling that J.H. could be considered for a subsidized

healthcare plan through Vermont Health Connect, but we do so based on a different rationale than that given by the Board.

¶ 2.    Under the Patient Protection and Affordable Care Act of 2010 (Affordable Care Act), each and every "applicable individual"[1] is required to maintain "minimum essential coverage" (MEC) for health care or pay a tax. I.R.C. § 5000A(a)-(b). Individuals may obtain MEC through government-sponsored or employer-sponsored healthcare plans or through a state insurance exchange such as Vermont Health Connect.[2] Id. § 5000A(f)(1). Moreover, individuals meeting certain criteria may obtain federal subsidies to help them purchase insurance on an exchange. Those subsidies consist of credits against income tax liability, which are called advance premium tax credits (APTC), and limits on out-of-pocket expenses for health care, which are called cost-sharing reductions. See id. § 36B (creating tax credit for individuals with coverage under qualified health plan); 42 U.S.C. § 18082 (establishing program for advance determination of premium tax credits and cost-sharing reductions and for payment of such subsidies to issuers of qualified healthcare plans on behalf of eligible individuals). To receive the cost-sharing reductions, an individual must be eligible for APTC. 45 C.F.R. § 155.305(g)(1)(i)(B). Similar state subsidies may also be available to those eligible for federal premium tax credits. See 33 V.S.A. § 1812 (setting forth eligibility standards for state subsidies).

¶ 3.    Federal regulations require state exchanges like Vermont Health Connect to perform certain functions related to eligibility, including determining, based on federally prescribed standards, an individual's eligibility to purchase a qualified healthcare plan through a state exchange and to receive APTC and cost-sharing reductions. See 45 C.F.R. § 155.200(a)

---

[1]   Under the Affordable Care Act, individuals with religious exemptions and individuals who are incarcerated or who are not lawfully in the country are not "applicable individuals." I.R.C. § 5000A(d). All other individuals are "applicable individuals" under the Act. Id. § 5000A(d)(1).

[2]   Vermont Health Connect is the only such exchange in the State of Vermont.

2

(requiring exchanges to perform functions set forth in specified subparts of regulation related to determining individual eligibility); 45 C.F.R. § 155.305(f)(5) ("The Exchange must calculate advance payments of premium tax credit in accordance with [Treas. Reg.] 1.36B-3."); see also 33 V.S.A. § 1805(6) (listing, as one of state exchange's duties, determining premiums and subsidies required under federal law). In Vermont, DCF's Economic Services Division determines eligibility for enrollment in qualified healthcare plans through Vermont Health Connect "in accordance with applicable provisions of federal and state law and regulations" pursuant to its Health Benefit Eligibility and Enrollment Rules. Health Benefit Eligibility and Enrollment Rule 2.05, Code of Vermont Rules 13 170 001 [hereinafter HBEE Rules], https://www.lexisnexis.com/hottopics/codeofvtrules.

¶ 4. The critical federal regulation in this case is Treasury Regulation § 1.36B-2. Under that regulation, an applicable taxpayer—defined as "a taxpayer whose household income is at least 100 percent but not more than 400 percent of the Federal poverty line for the taxpayer's family size for the taxable year"—may obtain the federal subsidies if the taxpayer is enrolled in a healthcare plan through an exchange and is not eligible for MEC other than through the exchange. Treas. Reg. § 1.36B-2(a)-(b). In general, "an employee who may enroll in an eligible employer-sponsored plan . . . and an individual who may enroll in the plan because of a relationship to the employee (a related individual) are eligible for minimal essential coverage under the plan." Id. § 1.36B-2(c)(3); HBEE Rule 23.01(c)(2) (same). "An employee or related individual may be eligible for minimum essential coverage under an eligible employee-sponsored plan . . . if the employee or related individual could have enrolled in the plan . . . during an open or special enrollment period." Treas. Reg. § 1.36B-2(c)(3)(iii) (emphasis added); HBEE Rule 23.01(c)(4)(i) (same).

3

¶ 5.     Pursuant to these rules, if J.H. is eligible for MEC under her husband's healthcare plan—meaning she "could have enrolled" in the plan—she may not receive federal or state subsidies through a Vermont Health Connect plan on the exchange.

¶ 6.     The salient facts in this case are undisputed. J.H. previously received Medicaid through the Dr. Dynasaur program but aged out of the program upon turning nineteen in 2013. The State continued to provide her with coverage under the program for two more years, however, due to an administrative error. In October 2015, DCF notified J.H. that her Dr. Dynasaur coverage would terminate at the end of that month but that she could apply for coverage through Vermont Health Connect.

¶ 7.     The following month, J.H. applied for healthcare coverage on the exchange. She reported that she was newly married, had a total gross household income of $36,868, and that her husband's employer offered healthcare insurance to him and to her as a spouse. The coverage available under the husband's employer-sponsored plan met the Affordable Care Act's MEC standards. Under the plan's terms, J.H. could not enroll in it unless her husband also enrolled.

¶ 8.     J.H.'s husband, as an unadopted former foster child over the age of eighteen, is eligible for Medicaid until he reaches the age of twenty-six. HBEE Rule 9.02(2)(e). Persons with this status are eligible for Medicaid regardless of the amount of their household income. Id. Rule 9.03(e). The husband could have enrolled in his employer-sponsored plan, but he chose not to do so because he had available to him premium-free Medicaid coverage.

¶ 9.     Based on these facts, DCF's Economic Services Division concluded that the husband's employer-sponsored plan was available to both J.H. and her husband and that J.H. was therefore ineligible to receive subsidies for insurance purchased through Vermont Health Connect. J.H. appealed to the Human Services Board, which reversed DCF's determination that J.H. was ineligible to receive the subsidies.

¶ 10.    In so ruling, the Board framed the issue as whether J.H.'s husband "is liable to enroll in his employer's insurance when he already has Medicaid coverage that meets MEC." The Board then determined that a conflict exists between the HBEE rule precluding a subsidized exchange plan for those who fail to enroll in an available employer-sponsored plan, see HBEE Rule 12.02(b), and the HBEE rule stating that MEC is automatically met when an individual is eligible for government-sponsored insurance such as Medicaid irrespective of whether other insurance is available to the individual, see id. 23.01(B)(1)(ii). According to the Board, the latter rule requires an individual such as J.H.'s husband who has MEC through a government-sponsored plan to apply for that coverage and not seek subsidies on an exchange, while the former rule requires the same individual to elect an employer-sponsored plan that would be superfluous in light of the premium-free government-sponsored plan and would bar a spouse from accessing affordable insurance. The Board declined to read the rules to require J.H.'s husband to obtain two insurance policies, stating that requiring him to obtain a second duplicative health insurance policy from his employer was contrary to the Affordable Care Act's primary intent of providing affordable health care to each individual and would deprive the husband of the special government benefit he receives as a former foster child.

¶ 11.    The Board further concluded that because the husband cannot be required to enroll in a duplicative employer-sponsored plan when he has met MEC through a government-sponsored plan, and because J.H. cannot obtain insurance through her husband's government-sponsored plan and cannot enroll in his employer-sponsored plan unless he does, she is eligible for subsidies through a Vermont Health Connect plan. Accordingly, the Board directed the Department of Vermont Health Access, which is within the Agency of Human Services and administers Vermont Health Connect, to award federal and state subsidies for J.H.'s purchase of healthcare insurance through Vermont Health Connect.

¶ 12. On appeal, the Department argues that the Board erred as a matter of law in ruling that J.H. was eligible for subsidized insurance through Vermont Health Connect and in requiring the Department to provide J.H. with tax subsidies for the purchase of insurance through the exchange. According to the Department, a plain reading of the relevant law compels the conclusion that J.H. was not entitled to the subsidies. In the Department's view, because both J.H. and her husband "could have enrolled" in the husband's employer-sponsored plan, J.H. was eligible for MEC under the plan and thus not eligible to receive subsidies through a Vermont Health Connect plan.

¶ 13. The Department further argues that the perceived conflict between HBEE rules cited by the Board in support of its decision does not exist because no rule or regulation requires husband to enroll in his government-sponsored Medicaid plan. The Department notes that the rule relied upon by the Board does not require individuals to enroll in an available government-sponsored Medicaid plan, as the Board concluded, but rather provides only that an individual who wants government-sponsored insurance must apply for it to receive it. See HBEE Rule 23.01(b)(2) ("An individual who meets the eligibility criteria for government-sponsored MEC must complete the requirements necessary to receive benefits."); Treas. Reg. § 1.36B-2(c)(2)(ii) (same). The Department agrees with the Board that J.H.'s husband cannot be compelled to enroll in his employer-sponsored plan, but asserts that that fact is not relevant to the question of whether J.H. is entitled to the tax subsidies. The Department emphasizes that it is the household's eligibility for employer-sponsored insurance through J.H.'s husband that controls the availability of the subsidies to J.H. According to the Department, J.H and her husband had to decide whether it was in their best interests for the husband to retain his government-sponsored plan and decline his employer-sponsored plan, in which case J.H. could purchase an unsubsidized exchange plan, or for husband to enroll in the employer-sponsored plan, either in addition to or instead of his government-sponsored plan, in which case J.H. could also enroll in the plan.

6

¶ 14. The Department further states that, given the plain meaning of the controlling law and the absence of any conflict among the controlling rules and regulations, there is no need for this Court to delve into the policies underlying the Affordable Care Act. In the Department's view, however, even if we were to do so, we would find that those policies are aimed at strengthening our employer-based health insurance system and thus actually support reversing the Board's decision.

¶ 15. In its amicus curiae brief filed on behalf of J.H., Vermont Legal Aid's Office of the Health Care Advocate (HCA) argues that because J.H.'s ability to enroll in her husband's employer-sponsored plan was conditioned upon her husband enrolling—a condition that was unmet and not within her power to fulfill—she could not have enrolled in the plan and thus was eligible for tax subsidies through a Vermont Health Connect plan.

¶ 16. As noted, federal law is controlling in this case. We review de novo the Board's construction of federal law and of state rules implementing federal law. See Hogan v. Dep't of Soc. & Rehab. Servs., 168 Vt. 615, 617, 727 A.2d 1242, 1244 (1998) (mem.) ("We defer to an administrative agency's interpretation of its own statutes and rules but not to a state agency's interpretation of federal law where the state agency is charged with administering the federal program at the local level."); see also Dutton v. Dep't of Soc. Welfare, 168 Vt. 281, 284, 721 A.2d 109, 111 (1998) ("[D]etermining whether the federal and state definitions are consistent is a matter that requires statutory interpretation—the exclusive province of the courts." (quotation omitted)).

¶ 17. As explained above, the Department's principal argument is that the plain meaning of the most critical federal regulation at issue here, Treas. Reg. § 1.36B-2(c)(3), demonstrates that J.H. was eligible for her husband's employer-sponsored plan and thus could not obtain tax subsidies through a Vermont Health Connect plan. Our primary objective in construing a statute or regulation is to effectuate the intent of the legislative body. In re Jones, 2009 VT 113, ¶ 7, 187

Vt. 1, 989 A.2d 482. "Our first step in the process is to ascertain the plain meaning of the statute, as we presume that that is the most basic expression of legislative intent." Id.

¶ 18. We conclude that the plain meaning of the regulation supports the HCA's position rather than that of the Department.

¶ 19. Although in most instances married couples must file a joint tax return to claim premium tax credits, see Temp. Treas. Reg. § 1.36B-2T, and household income is an eligibility criterion for such credits, see Treas. Reg. § 1.36B-2(b)(1), eligibility for the healthcare insurance subsidies, including APTC, is generally determined on an individual basis. See 42 U.S.C. § 18082(a)(3) ("[T]he Secretary of the Treasury makes advance payments of [premium tax credits] or reductions to the issuers of qualified health plans in order to reduce the premiums payable by individuals eligible for such credit.").[3] A tax filer who meets the filing status and income requirements may receive premium tax credits "for any month that one or more members of the applicable taxpayer's family" is enrolled in an exchange health plan and is not eligible for MEC other than coverage through an exchange. Treas. Reg. § 1.36B-2(a); HBEE Rule 12.02 (providing that "applicable tax filer . . . is eligible for APTC for any month in which one or more individuals for whom the tax filer expects to claim a personal exemption deduction on their tax return for the benefit year" is eligible to enroll in qualified health plan on exchange and is not eligible for MEC in individual market).

¶ 20. Notably, the critical regulation at issue addresses employer-sponsored eligibility for employees and for related family members separately. See Treas. Reg. § 1.36B-2(c)(3)(i) (discussing eligibility for MEC with respect to "an employee who may enroll in an eligible

---

[3] As set forth in 42 U.S.C. § 18082(a)(3), APTC are paid directly to the insurer and thus benefit the individual healthcare recipient directly by reducing the amount of the recipient's overall tax burden. See Treas. Reg. § 1.36B-4(a)(1) (reconciling premium tax credit with advance credit payments). Spouses filing a joint tax return would be directly benefitted only to the extent that they were entitled to a tax refund, which would happen only when the premium tax credit exceeded their APTC. See id.

employer-sponsored plan" and "an individual who may enroll in the plan because of a relationship to the employee"); id. § 1.36B-2(c)(3)(iii) (discussing consequences of failure to enroll in employer-sponsored plan by "[a]n employee or related individual . . . if the employee or related individual could have enrolled in the plan"); id. § 1.36B-2(c)(3)(v)(A)(1)-(2) (separately addressing affordability for employee and affordability for related individual).

¶ 21.    In its most relevant part, the regulation provides as follows: "An employee or related individual may be eligible for minimal essential coverage under an eligible employer-sponsored plan . . . if the employee or related individual could have enrolled in the plan . . . during an open or special enrollment period."  Id. § 1.36B-2(c)(3)(iii)(A) (emphasis added).  The plain meaning of this sentence is that an employee is eligible for MEC if the employee could have enrolled in an employer-sponsored plan, and a related individual is eligible for MEC if the related individual could have enrolled in the employer-sponsored plan.  The two scenarios are treated separately in the regulation.

¶ 22.    In the instant case, J.H.'s husband could have enrolled in his employer-sponsored plan but decided not to for apparent financial reasons—he had access to a premium-free government-sponsored plan through Medicaid.  Thus, under the regulation, he would not be entitled to tax subsidies through an exchange plan.  On the other hand, because her husband elected not to enroll in the employer-sponsored plan, J.H. could not have enrolled in the plan independent of him, insofar as the plan allowed family members to enroll only if the employee enrolled.  We discern no basis in law or fact to assume that J.H. could have compelled her husband to enroll in his employer-sponsored plan.

¶ 23.    Nowhere does the subject regulation, or any other regulation implementing the Affordable Care Act, indicate that an employee's decision whether to enroll in an employer-sponsored plan is imputed to family members or that family members are subject to the consequences of such a decision with respect to availability of tax subsidies through an exchange

9

plan. Imputing the husband's decision to J.H. without a specific factual or legal basis would be inconsistent not only with the Affordable Care Act's general determination of healthcare subsidies on an individual basis but also with the law's general treatment of spouses as individual persons. See Med. Ctr. Hosp. of Vt. v. Lorrain, 165 Vt. 12, 15, 675 A.2d 1326, 1329 (1996) ("Irrespective of their marital status, women have property and contractual rights equal to men, and thus the legal existence of married women is no longer merged into that of their husbands."); cf. United States v. Craft, 535 U.S. 274, 281 (2002) (noting, in context of detailing history of tenancy by entirety, outdated "common-law fiction that the husband and wife were one person at law").[4]

¶ 24. This is not a situation where the plain meaning of the pertinent regulation is inconsistent with the regulatory scheme as a whole, the governing statute, or the legislative goals underlying the statute. See Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (stating that legislative intent is derived from plain meaning of statutory language unless literal reading is inconsistent with legislative scheme or purpose of statute). The Affordable Care Act includes private health insurance market reforms, new tax subsidies, an expansion of the Medicaid program, an individual requirement to maintain health insurance, and many other provisions. See generally Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (2010). The Department argues that allowing J.H. to obtain tax subsidies under the circumstances in this case would undermine the Act's goal of strengthening the employer-based

---

[4] Imputing the husband's decision to J.H. would also appear to be inconsistent with the Internal Revenue Service's position that "[a] conditional offer [of health insurance coverage under an employer-sponsored plan] generally would impact a spouse's eligibility for the premium tax credit . . . only if all conditions to the offer are satisfied (that is, the spouse was actually offered the coverage and eligible for it)." See Department of the Treasury, Internal Revenue Service, Draft Instructions for Forms 1094-C & 1095-C for tax year 2016 (emphasis added), available at https://www.irs.gov/pub/irs-dft/i109495c--dft.pdf [https://perma.cc/GK7Y-5V7A]. It may be highly unlikely that an insurer would offer an employer-sponsored healthcare plan that would allow an employee's family members to enroll in the plan without the employee enrolling; however, because federal law does not require that family-member enrollment be conditioned on employee enrollment, an employer's offer of coverage to family members is, essentially, a conditional offer.

insurance system.  This argument is based on one of ten effects of the MEC requirement listed in Congressional findings—which is that the requirement "achieves near-universal coverage by building upon and strengthening the private employer-based health insurance system."  See 42 U.S.C. § 18091(2)(D).  The focus of the Affordable Care Act, however, is not to bolster the employer-based healthcare system.  As the United States Supreme Court has stated, the principal purpose of the Act is "to increase the number of Americans covered by health insurance and decrease the cost of health care."  Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2580 (2012).  Our construction of the relevant regulation is not inconsistent with that purpose.

Affirmed.

FOR THE COURT:

_____
Chief Justice

11