NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 70

No. 2020-299

| | |
|---|---|
| In re Petition of TruConnect Communications, Inc. | Supreme Court |
| | On Appeal from<br>Public Utility Commission |
| | May Term, 2021 |

Anthony Z. Roisman, Chair

Daniel A. Seff and Brian J. Sullivan of MSK Attorneys, Burlington, for Appellant.

Sarah L. J. Aceves, Special Counsel, Montpelier, for Appellee Vermont Department of Public
  Service.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **REIBER, C.J.** Petitioner TruConnect Communications, Inc., sought designation from the Vermont Public Utility Commission as an eligible telecommunications carrier (ETC) to provide affordable telecommunications service to qualifying Vermonters under the Federal Lifeline program. The Commission granted TruConnect's application subject to certain conditions, including a condition that required TruConnect to provide a free cellular handset to its customers. TruConnect appealed, arguing that the condition was imposed on clearly erroneous grounds. We agree and reverse and remand for the Commission to revise its order.

## I. Legal Framework

¶ 2. We begin by reviewing the Federal Lifeline program and the Commission's role in designating ETCs. The Telecommunications Act of 1996, which amended the Communications Act of 1934, aimed to provide universal telecommunications services to all people of the United

States while promoting competition and reducing regulation. See Pub. L. No. 104-104, 110 Stat. 56. The Act requires every telecommunications carrier that provides interstate services to contribute to a fund to advance universal service, administered by the Federal Communications Commission (FCC). 47 U.S.C. § 254(d). This fund, known as the Federal Universal Service Fund, supports four primary programs through subsidies distributed to carriers designated as ETCs. See id. § 254(e).

¶ 3. One such program is the Federal Lifeline program. The Lifeline program was created to ensure access to affordable landline telephone service and has since expanded its mission to include providing discounted access to voice or broadband internet service. See Bridging the Digital Divide for Low-Income Consumers, 34 FCC Rcd. 10886, 10887 ¶ 2 (FCC 19-111 Nov. 14, 2019) [hereinafter 2019 Lifeline Order]. To that end, ETCs receive a monthly federal subsidy per Lifeline customer for providing qualifying services under the program. Id. ¶ 3.

¶ 4. To participate in Lifeline or the other programs funded by the Universal Service Fund, a carrier must first be designated as an ETC under § 214(e). 47 U.S.C. § 254(e). Section 214 delegates to the states the primary authority to designate carriers as ETCs. Id. § 214(e)(2); see also 2019 Lifeline Order, 34 FCC Rcd. at 10898 ¶ 28 ("Congress made states—not the [FCC]— primarily responsible for designating ETCs."). The FCC, by contrast, designates carriers as ETCs when states lack jurisdiction or in unserved areas where no carrier is willing to provide Universal Service Fund services. 47 U.S.C. § 214(e)(3), (6).

¶ 5. Section 214 sets out certain essential requirements for a carrier to be designated as an ETC. The carrier must "offer the services that are supported by Federal universal service support mechanisms" as provided in FCC regulations. Id. § 214(e)(1)(A). To do so, the carrier must use its own facilities or use part of its own facilities along with resale of another carrier's services. Id. The carrier must also advertise the availability and costs of its services. Id.

§ 214(e)(1)(B).  Finally, ETC designation must be "consistent with the public interest, convenience, and necessity."  Id. § 214(e)(2).

¶ 6.  Section 214 establishes a federal baseline for ETC designation requirements, but states may impose additional requirements in a manner consistent with federal and other state law. In a 2005 order, the FCC adopted additional mandatory requirements for its own ETC designation proceedings under § 214(e)(6).  Fed.-State Joint Bd. on Universal Serv., 20 FCC Rcd. 6371 (FCC 05-46 Mar. 17, 2005).  The FCC encouraged state commissions to adopt these requirements but declined to make them binding on state commissions.  Id. at 6372 ¶ 1. It explained:

> We believe that section 214(e)(2) demonstrates Congress's intent that state commissions evaluate local factual situations in ETC cases and exercise discretion in reaching their conclusions regarding the public interest, convenience and necessity, as long as such determinations are consistent with federal and other state law. States that exercise jurisdiction over ETCs should apply these requirements in a manner that is consistent with section 214(e)(2) of the Act.  Furthermore, state commissions, as the entities most familiar with the service area for which ETC designation is sought, are particularly well-equipped to determine their own ETC eligibility requirements.

Id. at 6397 ¶ 61 (footnote omitted).  The 2005 order accords with Texas Office of Public Utility Counsel v. FCC, in which the Fifth Circuit held that "nothing in [§ 214(e)] prohibits the states from imposing their own eligibility requirements" on ETC designation.  183 F.3d 393, 418 (5th Cir. 1999) (reversing FCC rule prohibiting states from imposing additional eligibility requirements on ETC designations).[1]

## II.  Procedural History

¶ 7.  In May 2020, TruConnect submitted a petition to the Commission for designation as an ETC in Vermont to provide Lifeline services.  In the petition, TruConnect described its

---

[1] The parties raised various arguments regarding the scope of the Commission's authority to impose additional eligibility requirements on ETCs.  Because this case does not require us to determine the bounds of the Commission's authority in this regard, we do not reach these arguments, except to note that federal and state law may limit the Commission's discretion to impose additional requirements.

3

business and explained that it "offers consumers simple and affordable prepaid calling plans, easy-to-use handsets and high-quality customer service." TruConnect proposed to offer Lifeline services that included "1,000 voice minutes, unlimited text messages, and 3 GB of data per month at a net cost of $0.00." Additionally, it stated that it offers customers a "free SIM card for use in their existing or purchased device."

¶ 8. The Commission asked the Vermont Department of Public Service (DPS) and any other parties to file comments on the petition. DPS suggested that the Commission order TruConnect to file a marketing plan; subject to this condition, DPS recommended that the Commission approve the petition "without further hearings or investigation."

¶ 9. The Commission's hearing officer issued a proposed decision, concluding that the petition satisfied federal and state requirements and recommending that the Commission designate TruConnect as an ETC in Vermont. Pointing to TruConnect's petition, the hearing officer found that "TruConnect's prepaid Lifeline customers will receive the following services free of charge: a handset, voice mail, caller-I.D., call-waiting services, and no out-of-pocket fees." The proposed decision included a condition requiring TruConnect to "[p]rovide all its Vermont Lifeline customers with an E-911 compliant handset at no charge. The costs of providing the handsets will be borne by [TruConnect], and no portion of these costs will be supported by the federal Universal Service Fund." The hearing officer invited the parties to file any comments with the Commission, to be considered along with the proposed decision.

¶ 10. In response, TruConnect filed a comment seeking modification of the free-handset condition. The company explained that its petition "did not propose a free handset as part of [its] Lifeline offering, but rather a free SIM card for use in a customer's existing or purchased device." It noted that in 2016, the FCC began requiring Lifeline providers to support broadband services and implemented minimum service standards that increase annually but did not correspondingly increase the Lifeline subsidy. "[D]ue to the ever-increasing cost of providing Lifeline service" for

4

the same subsidy, TruConnect explained, "it is no longer feasible for wireless ETCs to offer free handsets." Additionally, because Lifeline funds do not subsidize equipment, the company asserted that providing free handsets "should be dictated by market competition and not required as a condition of ETC designation." TruConnect proposed that the Commission amend the handset condition to instead indicate that handsets provided by the company for use with its Lifeline service shall be E-911 compliant and that any costs of providing discounted handsets would not be supported by the Federal Universal Service Fund.

¶ 11.    The Commission issued a final order adopting the findings and conclusions of the hearing officer and approving TruConnect's petition for ETC designation. The final order included the free-handset condition. The order noted that no party filed comments on the proposed decision.

¶ 12.    About a month later, the Commission issued an amended final order that likewise approved TruConnect's petition for ETC designation, subject to the free-handset condition. The Commission stated that it had inadvertently omitted TruConnect's comments from the initial order, but after considering the comments, found no grounds to amend its previous order. The Commission explained that TruConnect's request that it be allowed to provide discounted handsets instead of free handsets was "inconsistent" with TruConnect's statement in its petition "that it 'offers consumers . . . handsets.' " It noted that the requirement to provide a compliant handset to Lifeline customers was "an essential requirement of ETC status" that lies "at the heart of the Lifeline program." The Commission emphasized that participation in the Lifeline program is voluntary and confers federal benefits, so if TruConnect did not want to comply with program requirements, the "proper recourse is to refrain from seeking Lifeline funds, not to seek changes to the program requirements." As such, it denied TruConnect's request to modify the condition.

¶ 13.    TruConnect appealed, challenging the Commission's imposition of the free-handset condition. TruConnect argues that the Commission erred in finding that TruConnect's

5

petition asserted that the company provides free handsets and in stating that the Federal Lifeline program requires ETCs to provide free handsets.[2]

## III. Standard of Review

¶ 14. This Court reviews orders of the Public Utility Commission with deference to the Commission's informed judgment and expertise. In re Verizon New England, Inc., 173 Vt. 327, 334, 795 A.2d 1196, 1202 (2002). Commission orders are presumed to be valid, and we will accept the Commission's findings and conclusions unless they are clearly erroneous. Id.; see also 30 V.S.A. § 11(c) ("Upon appeal to the Supreme Court, [the Commission's] findings of fact shall be accepted unless clearly erroneous.").

¶ 15. The appealing party bears the burden of proving that the Commission's findings and conclusions are clearly erroneous. In re Investigation into Regulation of Voice over Internet Protocol Servs., 2013 VT 23, ¶ 21, 193 Vt. 439, 70 A.3d 997. This is a heavy burden, as "[w]e must have 'the definite and firm conviction that a mistake has been committed before we will hold a finding to be clearly erroneous.' " In re Adelphia Bus. Solutions of Vt., Inc., 2004 VT 82, ¶ 7, 177 Vt. 136, 861 A.2d 1078 (alterations omitted) (quoting In re Vt. Elec. Power Co., 131 Vt. 427, 432, 306 A.2d 687, 690 (1973)).

¶ 16. Where federal law controls, however, we review an agency's "construction of federal law and of state rules implementing federal law" without deference. In re J.H., 2016 VT 122, ¶ 16, 203 Vt. 606, 160 A.3d 1023; see also Hogan v. Dep't of Social & Rehab. Servs., 168 Vt. 615, 617, 727 A.2d 1242, 1244 (1998) (mem.) ("We defer to an administrative agency's interpretation of its own statutes and rules but not to a state agency's interpretation of federal law where the state agency is charged with administering the federal program at the local level.").

---

[2] TruConnect also argues that federal law preempts the free-handset condition, contending that the condition is inconsistent with federal law. Because we conclude that the Commission's finding and conclusion regarding the handsets were clearly erroneous, we do not reach this argument.

## IV. Analysis

¶ 17. The Commission imposed the free-handset condition because: (1) it found that TruConnect offered to provide free handsets to Lifeline customers in Vermont and (2) it concluded that Lifeline requires ETCs to offer free handsets. As to the first ground, we conclude the finding lacked support in the record. As to the second ground, we agree with the parties that the Lifeline program does not require ETCs to provide free handsets. Consequently, we conclude that the Commission erred by imposing the free-handset condition. We discuss each issue in turn.

¶ 18. TruConnect first argues that the Commission erred by finding that TruConnect's petition asserted that it provides free handsets to Lifeline customers. The petition stated that the company offers "easy-to-use handsets." The petition also stated that customers "will receive a free SIM card for use in their existing or purchased device," as well as other services "at no additional charge." Pointing to these statements, the Commission found that TruConnect offers free handsets.

¶ 19. This Court will uphold the Commission's findings when they are supported by the record. In re Vt. Gas Sys., Inc., 2017 VT 83, ¶ 14, 205 Vt. 509, 174 A.3d 1253. While it is the province of the Commission, not this Court, to weigh the evidence presented, see In re Rutland Renewable Energy, LLC, 2016 VT 50, ¶ 29, 202 Vt. 59, 147 A.3d 621, we will sustain the Commission's weighing of the evidence only "if there is evidence to support it." In re Green Mountain Power Corp., 131 Vt. 284, 305, 305 A.2d 571, 584 (1973).

¶ 20. Here, the record contains no evidence supporting the Commission's finding that TruConnect offered to provide free handsets to Vermont customers. Where TruConnect provides products or services for no cost, the petition clearly indicated that Vermont Lifeline customers "will receive" them "at a net cost of $0.00," for "free," or "at no additional charge." By contrast, the petition merely stated that the company offers "easy-to-use handsets." This assertion describes the handset's functionality, not the price. Further, the statement that TruConnect's Lifeline customers will receive a free SIM card for use in the customer's "existing or purchased device"

7

supports the company's argument that it sells handsets and does not provide them for free. Without any support in the record, we can only conclude that the finding is clearly erroneous. See id. (concluding that finding was clearly erroneous where record did not support it); see also Alberino v. Balch, 2008 VT 130 ¶ 7, 185 Vt. 589, 969 A.2d 61 (mem.) ("Findings are clearly erroneous if there is no credible evidence in the record to support them").

¶ 21. DPS's arguments to the contrary are unpersuasive. DPS counters that TruConnect's assertion that it offers "easy-to-use handsets" is ambiguous and could be construed in various ways. However, DPS offers no explanation as to how "easy-to-use" could reasonably be construed as "free." DPS also asserts that TruConnect does provide free handsets in some instances, pointing to TruConnect's website where the company advertises that it provides free handsets to eligible customers. Given this, DPS argues that TruConnect did not sufficiently show that it does not provide free handsets or explain why it should not have to comply with the free-handset condition.[3] But this argument gets it backwards by resting on the faulty premise that TruConnect had the burden of demonstrating that it does not provide free handsets. Additionally, it rests on the faulty premise that free handsets are an essential part of the Lifeline program.

¶ 22. To that point, we next address TruConnect's argument that the Commission erred by concluding that the Federal Lifeline program requires ETCs to provide free handsets. We agree that the Lifeline program imposes no such requirement. Under the Federal Telecommunications Act, the baseline requirements for ETC designation do not require carriers to provide equipment— much less free equipment. See 47 U.S.C. § 214(e). In fact, the Act provides that ETCs may only

---

[3] DPS also argues that because TruConnect's website represents that the company provides free handsets to eligible customers, it would cause consumer confusion to remove the free handset condition. However, DPS acknowledges that "consumer confusion did not factor into the Commission's decision." Because the Commission did not justify its decision on consumer confusion grounds, we will not uphold it on that basis. See Conservation Law Found. v. Burke, 162 Vt. 115, 128, 645 A.2d 495, 503 (1993) (explaining that "[a]gency decision must stand or fall on the reasons given contemporaneously with the decision and not a later revision of those reasons").

8

use subsidies from the Universal Service Fund "for the provision, maintenance, and upgrading of facilities and services for which the support is intended." Id. § 254(e) (emphasis added).

¶ 23.   The FCC regulations laying out minimum service standards for Lifeline ETCs likewise do not require carriers to provide a free handset. See 47 C.F.R. § 54.408. Moreover, the FCC recently considered whether Lifeline should provide funding for handsets or other equipment and decided not to do so. See Lifeline & Link Up Reform & Modernization, 31 FCC Rcd. 3962, ¶ 125 (FCC 16-38 Apr. 27, 2016) ("Past [FCC] precedent makes it clear that Lifeline . . . has been used to fund services, and not equipment. At this time we see no reason to deviate from this approach." (footnotes omitted)). The FCC instead "encourage[d] the private sector to work collaboratively with the Lifeline program and Lifeline providers to help make devices more available." Id.

¶ 24.   Finally, while states may impose additional requirements on ETC designation, the requirement to provide a free handset cannot be characterized as an "essential requirement" of ETC status in Vermont. Neither DPS nor the Commission has adopted any regulation requiring carriers to provide a free handset as a condition of ETC designation in Vermont. DPS initially asserted that the Commission has generally required ETCs to provide Vermont Lifeline customers with a free handset.[4] However, after argument, DPS clarified that none of the companies currently participating in the Lifeline program in Vermont provide its customers with a free handset.

¶ 25.   Given this, the Lifeline program clearly does not compel ETCs to provide free handsets. Indeed, DPS concedes this point. Nevertheless, DPS maintains that the Commission has authority to impose conditions on ETCs within its discretion, pursuant to 47 U.S.C. §§ 214(e)(2), 253(b), and 254. But the Commission did not impose the free-handset condition on

---

[4] Because the question is not squarely presented in this appeal, we do not decide whether the Commission may permissibly impose "standard" conditions on a case-by-case basis through ETC designation proceedings as opposed to formal rulemaking. See 47 U.S.C. § 254(f) (providing that states "may adopt regulations not inconsistent with the [FCC's] rules to preserve and advance universal service").

this basis. The Commission instead justified the condition by asserting that providing a free handset was an "essential requirement" that lies "at the heart of the Lifeline program." An agency decision "must stand or fall on the reasons given contemporaneously with the decision and not a later revision of those reasons." Conservation Law Found., 162 Vt. at 128, 645 A.2d at 503; see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) (rejecting "appellate counsel's post hoc rationalizations for agency action" as "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). Consequently, we review the Commission's order based on the reasoning set forth therein, not the alternate rationale raised by DPS for the first time on appeal. We conclude that the Commission erred by concluding that the provision of free handsets is an "essential requirement" of the Federal Lifeline program.

¶ 26.    In sum, neither the law nor the record before us justifies the Commission's decision to impose the free-handset requirement, and we are "left with the definite and firm conviction that a mistake has been committed." Vt. Elec. Power Co., 131 Vt. at 432, 306 A.2d at 690. Accordingly, we conclude that the Commission erred in conditioning TruConnect's ETC designation on the requirement that it provide free handsets, and that Condition 9(f) should be stricken from the Amended Final Order.

Reversed and remanded to the Public Utility Commission to revise the order to comply with this decision.

FOR THE COURT:

_____
Chief Justice

10